# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEAMFITTERS UNION, LOCAL 420 WELFARE FUND, STEAMFITTERS UNION, LOCAL 420 PENSION FUND, STEAMFITTERS UNION, LOCAL 420 SUPPLEMENTAL RETIREMENT PLAN, STEAMFITTERS UNION, LOCAL 420 APPRENTICESHIP TRAINING FUND, SCHOLARSHIP FUND OF STEAMFITTERS LOCAL UNION NO. 420, and STEAMFITTERS UNION, LOCAL 420 INDUSTRY ADVANCEMENT FUND 14420 Townsend Road Philadelphia, PA 19154, : and : LOCAL UNION NO. 420 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA 14420 Townsend Road Philadelphia, PA 19154, : Plaintiffs, : v. : C & C CAMPANO HVAC, INC. 1995 Ferry Avenue Camden, NJ 08104, : and : CAMPANO MECHANICAL SERVICES, INC. 820 Montrose Street Philadelphia, PA 19147, : Defendants. | CIVIL ACTION NO. |

## COMPLAINT

Steamfitters Union Local No. 420 Welfare Fund (hereinafter "Welfare Fund"), Steamfitters Union Local No. 420 Pension Fund (hereinafter "Pension Fund"), Steamfitters Union Local No. 420 Supplemental Retirement Plan (hereinafter "SRP"), Steamfitters Union Local No. 420 Apprenticeship Training Fund (hereinafter "Apprenticeship Fund"), Scholarship Fund of the Steamfitters Local Union No. 420 (hereinafter "Scholarship Fund"), Steamfitters Union Local 420 Industry Advancement Fund (hereinafter "Industry Advancement Fund"), and the Local Union No. 420 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (hereinafter the "Union") for their Complaint herein respectfully allege as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to §502(a)(3)(B), (d)(1) and (f) and §4301(a)(1), (b) and (c) of the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. §§1132 (a)(3)(B), (d)(1) and (f) and §1451(a)(1), (b) and (c), respectively, and §301(a) of the Labor Management Relations Act, 29 U.S.C. §185(a).

2. This Court is one of proper venue under ERISA §§502(e)(2) and 4301(d), 29 U.S.C. §§1132(e)(2) and 1451(d), because all of the Plaintiffs and one of the Defendants have offices in Pennsylvania.

### PARTIES

3. At all times relevant hereto, Plaintiffs Welfare Fund, Pension Fund, SRP, Apprenticeship Fund, and Scholarship Fund (collectively, "the ERISA Funds"), are trust funds

established under 29 U.S.C. § 186(c)(5) and "multiemployer plans" and "employee benefit plans" within the meaning of 29 U.S.C. § 1002(37), (1), (2) and (3).

4. Plaintiff Industry Advancement Fund is a fund created for the purpose of fostering and advocating the interests of the servicing industry in the air conditioning and refrigeration fields.

5. Plaintiff Union is an unincorporated association commonly referred to as a labor union, and is the exclusive representative for the purposes of collective bargaining of certain employees of Defendant Campano Mechanical Services, Inc. (hereinafter "Campano" or "Employer") who are and/or were employed in an industry affecting interstate commerce within the meaning of 29 U.S.C. §§152(5), (6) and (7), 185(a) and 1002 (4), (11), and (12).

6. The ERISA Funds, the Industry Advancement Fund, and the Union maintain their principal place of business and are administered from offices listed in the caption which are located in the Eastern District of Pennsylvania.

7. Defendant Campano is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) which maintains the business address listed in the caption.

8. Defendant C&C Campano HVAC, Inc. ("C&C") is the parent company of Defendant Campano. Defendants Campano and C&C (collectively "Defendants" or the "Employer") are alter egos of each other and/or the joint employer of members of the bargaining unit represented by the Plaintiff Union, and thus is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12). C&C maintains the business address listed in the caption.

9. On February 10, 2010, the Defendant Campano signed a Consent and Approval Statement in which it agreed to be bound by the collective bargaining agreement between the Union and the Servicing Contractors Association of Greater Delaware Valley, Inc. A true and correct copy of the Consent and Approval Statement is attached hereto as Exhibit A.

10. At approximately the same time the Consent and Approval Statement was signed, Defendants C&C and Campano also signed an "Addendum to [the] Collective Bargaining Agreement" which stated that C&C is the parent company of Campano and that "all of the Campano owned or controlled companies shall be bound by, and subject to, the terms and provisions of [the] collective bargaining agreement(s) with the Union." A true and correct copy of the Addendum to Collective Bargaining Agreement is attached hereto as Exhibit B.

11. Pursuant to the Consent and Approval Statement the Defendants were bound by a serious of collective bargaining agreements, including the collective bargaining agreement in effect between May 15, 2011, and May 14, 2014, ("2011-2014 CBA") and the collective bargaining agreement in effect between May 15, 2014, and May 14, 2017 ("2014-2017 CBA"). A true and correct copy of the 2011-2014 CBA is attached hereto as Exhibit C and a true and correct copy of the 2014-2017 CBA is attached hereto as Exhibit D.

12. Pursuant to those collective bargaining agreements, the Defendants were required:

(a) to make full and timely payments to the ERISA Funds, Industry Advancement Fund, and the Union;

(b) to file monthly remittance reports with the ERISA Funds, Industry Advancement Fund, and the Union listing all employees for whom contributions were due under the collective bargaining agreement and the total number of hours each such employee worked during that month;

(c) to produce, upon request by the ERISA Funds, Industry Advancement Fund, and/or the Union, individually or jointly, all books and records deemed necessary to

        conduct an audit of the Company's record concerning its obligations to the Funds, the Association, and/or the Union;

(d)     to pay interest, liquidated damages, and all costs of litigation, including attorneys' fees expended by the ERISA Funds, Industry Advancement Fund, and the Union to collect any amounts due as a consequence of the Company's failure to comply with its contractual obligations as described in subparagraphs (a), (b), or (c); and

(e)     to be bound by the Trust Documents that govern the ERISA Funds and Industry Advancement Fund, and the policies promulgated by the Trustees of those Funds pursuant to those Trust documents.

## CAUSE OF ACTION

13. The above paragraphs are incorporated herein by reference as though duly set forth at length.

14. The Trust Agreements of the various ERISA Funds require the Employer to produce on demand documents necessary for the ERISA Funds to determine that the correct number of hours and compensation paid to employees were reported properly.

15. The Plaintiffs have promulgated a Policy for Collection of Delinquent Contributions, Payroll Audits, Refund of Mistaken Contributions, Bonding and Contributions by Owners ("Delinquency Policy") which requires contributing employers to be subject to periodic payroll audits to determine whether the correct number of hours and amount of compensation were reported to the ERISA Funds, Industry Advancement Fund, and the Union and to assure that the correct contributions were paid. A true and correct copy of the Delinquency Policy is attached hereto as Exhibit E.

16. Pursuant to this right to audit, the ERISA Funds, Industry Advancement Fund, and the Union have retained Daniel A. Winters & Company (hereinafter "DAW"), a public accounting firm, to conduct periodic independent audits of its contributing employers.

17. In November 2016, Wil Wilkinson (hereinafter "Wilkinson"), an auditor from DAW, contacted the Employer and requested access to the books and records necessary to conduct a payroll audit for the period between January 1, 2014, and July 31, 2016.

18. On December 8, 2016, Wilkinson visited the Employer's premises and reviewed some of the records necessary for an audit.

19. During the visit, Wilkinson told the Employer that there were certain documents he still needed to review but which were not available during the audit. The Employer responded that it would "work on" getting those documents and that they would send the documents after the holidays.

20. Later that day, Wilkinson emailed the Employer a list of the documents that he still needed to review to complete the audit. A true and correct copy of the December 8, 2016 email from Wilkinson to the Employer is attached hereto as Exhibit F.

21. On February 1, 2017, after not receiving any of those documents, Wilkinson sent another email requesting those documents from the Employer. A true and correct copy of Wilkinson's February 1, 2017 email is attached hereto as Exhibit G.

22. The Employer did not respond to Wilkinson's request.

23. On February 14, 2017, Wilkinson sent another email to the Company, which reiterated his request for a third time. A true and correct copy of Wilkinson's February 14, 2017 email is attached hereto as Exhibit H.

24. On February 22, 2017, Colin Campano responded on behalf of the Employer, stating "we are working on it, will be in contact soon." A true and correct copy of Mr. Campano's February 22, 2017 email is attached hereto as Exhibit I.

25. On March 6, 2017, after not receiving any of the requested information, Wilkinson emailed Mr. Campano for an update, and listed for the fourth time the information needed to complete the audit. A true and correct copy of Wilkinson's March 6, 2017 email is attached hereto as Exhibit J.

26. Mr. Campano did not respond, nor did any other agent of the Employer.

27. On April 24, 2017, Plaintiffs, by and through their counsel, sent a letter to the Employer advising it of the Plaintiffs' right to conduct the payroll audit and demanding that the Employer provide the auditors with immediate access to the records demanded by Wilkinson in his four prior emails. A true and correct copy of the April 24, 2017 letter is attached hereto as Exhibit K.

28. The Employer did not respond to the April 24, 2017 letter.

29. The Employer's books and financial records, including all of the records requested in Wilkinson's emails on December 8, 2016, February 1, 2017, February 14, 2017, and March 6, 2017, are the only method to review whether the Employer reported the correct hours and made the correct contributions for the period from January 1, 2014, through July 31, 2016.

30. The Employer's financial books and records are in the exclusive control of the Employer.

31. The potential hardships to the Employer by an order requiring the Employer to grant the auditors access are outweighed by the Plaintiffs' interests in assuring that the Employer has fulfilled its contractual and statutory obligations to the Plaintiffs.

32. There is no adequate remedy at law.

33. All conditions precedent to equitable relief have been satisfied.

WHEREFORE, Plaintiffs ask that the Court:

(1) Enter an order requiring the Employer to provide the Funds' auditors access to all necessary information to complete a payroll audit of the period from January 1, 2014, through July 31, 2016;

(2) Retain jurisdiction to enter judgment for any contributions found due and owing as a result of the audit;

(3) Enter judgment in favor of the Plaintiffs and against the Employer for attorneys' fees and costs pursuant to ERISA, 29 U.S.C. Section 1132(g)(2)(D); and

(4) Grant any other further relief the court finds just and proper.

CLEARY, JOSEM & TRIGIANI, LLP

BY: _____
WILLIAM T. JOSEM, ESQUIRE
JEREMY E. MEYER. ESQUIRE
Constitution Place
325 Chestnut Street, Suite 200
Philadelphia, PA 19106
(215) 735-9099

Dated: May 12, 2017